******************************************************

The ''officially released'' date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

JUDSON BROWN v. COMMISSIONER
OF CORRECTION
(SC 20474)

Robinson, C. J., and McDonald, D'Auria, Mullins,
Kahn, Ecker and Keller, Js.

*Syllabus*

Pursuant to the rules of practice (§ 23-24), once a petition for a writ of
habeas corpus is filed in the Superior Court, "[t]he judicial authority
shall promptly review [the] petition . . . to determine whether the writ
should issue. The judicial authority shall issue the writ unless it appears
that . . . the court lacks jurisdiction . . . the petition is wholly frivo-
lous on its face . . . or . . . the relief sought is not available," and
"[t]he judicial authority shall notify the petitioner if it declines to issue
the writ pursuant to this rule."

Pursuant further to the rules of practice (§ 23-29 (3)), "[t]he judicial authority
may, at any time, upon its own motion . . . dismiss the petition, or any
count thereof, if it determines that . . . the petition presents the same
ground as a prior petition previously denied and fails to state new facts
or to proffer new evidence not reasonably available at the time of the
prior petition . . . ."

The petitioner, who had been convicted of arson in the first degree and
conspiracy to commit arson in the first degree, filed a successive habeas
petition, claiming that he was not canvassed properly about his right
to appeal when the public defender assigned to represent him withdrew
from representation before the start of the defendant's criminal trial.
The habeas court, acting on its own motion and without notifying the
parties, dismissed the petition as repetitious pursuant to Practice Book
§ 23-29 (3). Thereafter, the petitioner filed a petition for certification to
appeal, which the habeas court denied, and the petitioner appealed to
the Appellate Court, which summarily dismissed the petitioner's appeal.
On the granting of certification, the petitioner appealed to this court,
claiming that the habeas court improperly had dismissed his petition
pursuant to § 23-29 without providing him with prior notice and an
opportunity to be heard.

*Held* that, prior to dismissing a habeas petition on its own motion under
Practice Book § 23-29, a habeas court is required to provide the petitioner
with notice of the court's intention to dismiss the petition, and the
petitioner has the right to be heard on the papers, either by way of a
brief or a written response, the habeas court thus improperly dismissed
the petitioner's habeas petition pursuant to § 23-29 (3) without providing
the petitioner with prior notice and an opportunity to submit a brief or
a written response, and, accordingly, this court reversed the Appellate
Court's judgment dismissing the petitioner's appeal and remanded the
case for further proceedings:

Because Practice Book § 23-29 was ambiguous with respect to whether
a habeas court is required, once it issues the writ after applying the
criteria set forth in Practice Book § 23-24, to provide notice and an
opportunity to be heard before dismissing a petition pursuant to § 23-
29 on its own motion, this court reviewed the historical development of
those rules, including the wholesale revision of the provisions governing
habeas proceedings (§ 23-21 et seq.) by the Rules Committee of the
Superior Court and a predecessor rule that previously had expressly
authorized habeas courts to dismiss repetitive petitions without a hear-
ing, as well as the differences and interplay between §§ 23-29 and 23-
24, the latter of which acts as a gatekeeping mechanism and requires
the court only to provide notice after it has declined to issue the writ, and
these considerations led this court to conclude that the Rules Committee
intended that dismissal under § 23-29 requires additional procedural safe-
guards beyond those that are required for a decision not to issue the
writ under § 23-24.

Although those additional safeguards required, at the least, prior notice

to the petitioner or the petitioner's counsel and the opportunity to file a written response, it would be overly burdensome and inefficient to require the habeas court to conduct a full hearing on every petition that survives the court's initial review under Practice Book § 23-24, especially in light of the public policy underlying the legislature's comprehensive habeas reform in 2012, which was intended to improve and expedite the habeas process by efficiently disposing of frivolous petitions.

This interpretation was consistent with the intent of the Rules Committee in revising the rules, drew a proper balance between the competing interests of affording petitioners due process and the need for expeditious resolution of habeas petitions in an effort to reach the meritorious cases, and permitted habeas courts to conduct full hearings when they deem them appropriate.

Insofar as the habeas court in the present case did not have the opportunity to first determine whether any grounds existed for it to decline to issue the writ pursuant to Practice Book § 23-24, the case was remanded to the habeas court to first make that determination; if it opts to issue the writ and again elects to exercise its discretion to dismiss the petition on its own motion pursuant to Practice Book § 23-29, it must provide the petitioner with prior notice and an opportunity to file a brief or a written response addressing the proposed basis for dismissal pursuant to § 23-29.

(*One justice concurring separately*)

Argued September 15, 2021—officially released October 4, 2022

*Procedural History*

Petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland, where the court, *Newson, J.*, rendered judgment dismissing the petition; thereafter, the court denied the petition for certification to appeal, and the petitioner appealed to the Appellate Court, *Elgo*, *Moll* and *Bishop, Js.*, which dismissed the appeal, and the petitioner, on the granting of certification, appealed to this court. *Reversed*; *further proceedings*.

*Michael W. Brown*, for the appellant (petitioner).

*Laurie N. Feldman*, deputy assistant state's attorney, with whom, on the brief, was *Patrick J. Griffin*, chief state's attorney, for the appellee (respondent).

*Opinion*

KAHN, J. This appeal requires us to consider the proper procedure that a habeas court is required to follow before dismissing a petition for a writ of habeas corpus, on its own motion, under Practice Book § 23-29. This court previously reviewed the interplay between § 23-29 and Practice Book § 23-24, and established that § 23-24 allows a habeas court to review and dismiss clearly defective petitions by sending notice to the parties after it declines to issue the writ. See *Gilchrist* v. *Commissioner of Correction*, 334 Conn. 548, 561, 223 A.3d 368 (2020). In *Gilchrist*, we did not address the issue we confront today: whether § 23-29 allows a habeas court to dismiss a petition, on its own motion, without prior notice and an opportunity to be heard. The petitioner, Judson Brown, argues that a dismissal under that section entitles him to prior notice and a hearing. The respondent, the Commissioner of Correction, argues that, as with § 23-24, no prior notice or an opportunity to be heard is required. This issue, to our knowledge, has not been taken up by the Rules Committee of the Superior Court, even after this court's decision in *Gilchrist*. As in *Gilchrist*, our task in the present case is merely to ascertain the meaning of our rules of practice.[1] After reviewing the language of §§ 23-24 and 23-29, and their relationship to the provisions generally governing habeas corpus proceedings; see Practice Book § 23-21 et seq.; the historical development of the writ of habeas corpus and the public policy underlying the legislature's comprehensive habeas reform; see Public Acts 2012, No. 12-115, § 1 (P.A. 12-115); we conclude that § 23-29 requires the habeas court to provide prior notice of the court's intention to dismiss, on its own motion, a petition that it deems legally deficient and an opportunity to be heard on the papers by filing a written response. The habeas court may, in its discretion, grant oral argument or a hearing, but one is not mandated. We believe this interpretation draws a proper balance between the competing interests of affording petitioners due process while addressing the need for the expeditious resolution of habeas petitions in an effort to reach the meritorious cases. We observe that the Rules Committee remains free to amend the text of the relevant rules as it deems appropriate.

The present case arises out of a petition for a writ of habeas corpus filed by the self-represented petitioner, relating to the withdrawal of his public defender's appearance during the course of his underlying criminal trial. The habeas court, acting on its own motion and without prior notice, dismissed the petition as repetitious pursuant to Practice Book § 23-29 (3) and subsequently denied the petition for certification to appeal. The Appellate Court summarily dismissed the petitioner's appeal; *Brown* v. *Commissioner of Correction*, 196 Conn. App. 902, 225 A.3d 980 (2020); and this court

subsequently granted the petitioner's petition for certification to appeal from the judgment of the Appellate Court. *Brown* v. *Commissioner of Correction*, 335 Conn. 920, 231 A.3d 1169 (2020). On appeal, the petitioner claims that he was entitled to both prior notice and an opportunity to be heard, and that, as a result, the Appellate Court improperly dismissed his appeal from the habeas court's judgment of dismissal and the denial of his petition for certification to appeal. We agree, in part, with the petitioner that a dismissal under § 23-29, which occurs after the writ has issued and the action has commenced, requires some procedural safeguards, specifically, prior notice and an opportunity to submit a brief or a written response, but not a full hearing. We therefore reverse the judgment of the Appellate Court and remand the case for further proceedings before the habeas court consistent with this opinion.

The following undisputed facts and procedural history are relevant to the present appeal. The petitioner was convicted in 1999, following a jury trial, of arson in the first degree and conspiracy to commit arson in the first degree, and sentenced to twenty-five years of imprisonment. *State* v. *Brown*, 256 Conn. 291, 293, 772 A.2d 1107, cert. denied, 534 U.S. 1068, 122 S. Ct. 670, 151 L. Ed. 2d 584 (2001). Although the petitioner was originally provided counsel by the public defender's office, counsel later withdrew because the petitioner was found to possess significant assets. Id., 297 n.6.[2] The petitioner waived his right to appeal the withdrawal of the public defender and proceeded to represent himself at his criminal trial. Id., 297. The petitioner appealed his conviction to the Appellate Court on the sole ground of prosecutorial impropriety. See id., 293. After transferring the appeal to this court, we rejected that claim and affirmed the judgment of conviction. Id., 293, 313.

The petitioner, represented by assigned counsel, filed his first amended habeas petition in 2002, challenging his conviction on the following four grounds: improper withdrawal by trial counsel, ineffective assistance of trial counsel, judicial misconduct by the trial judge, and ineffective assistance by his appellate counsel. The habeas court denied his habeas petition, and the Appellate Court affirmed the habeas court's judgment. *Brown* v. *Commissioner of Correction*, 92 Conn. App. 382, 383, 389, 885 A.2d 761 (2005), appeal dismissed, 281 Conn. 466, 915 A.2d 870 (2007).

The petitioner filed a second amended habeas petition in 2009, claiming that his first habeas counsel had rendered ineffective assistance by failing to allege that (1) he was deprived of his constitutional right to counsel at his criminal trial, and (2) defense counsel in his direct appeal had improperly failed to raise this issue before the Appellate Court. The habeas court denied this second petition as well, finding that it was "clear that the

petitioner was provided all of his due process rights when the court made its initial determination to allow the public defenders to withdraw." Once again, the Appellate Court affirmed the habeas court's judgment. See *Brown* v. *Commissioner of Correction*, 141 Conn. App. 251, 253, 263, 61 A.3d 554, cert. denied, 308 Conn. 941, 66 A.3d 883 (2013).[3]

The petitioner, representing himself, then filed a third habeas petition in 2014, which he amended in 2015 with the assistance of counsel, claiming "ineffective waiver of counsel in violation of [his] sixth amendment right to counsel." The habeas court, *Fuger, J.*, issued an oral decision in which he denied that petition, concluding that any claim challenging the trial court's ruling permitting the withdrawal of the public defender during the criminal trial was barred by res judicata. Judge Fuger advised the petitioner: "I'm sorry to say to you that the issue is over and done with. I understand how you feel, but the matter has been litigated. And, at this point, I see no further relief . . . . [I]t would be, I think, very difficult for [the petitioner] to be able to find something unique to be able to proceed on [another] habeas petition. I think [the petitioner has] sort of had all the bites at the apple that [he] can [have]." The Appellate Court summarily dismissed the appeal that followed. See *Brown* v. *Commissioner of Correction*, 181 Conn. App. 901, 182 A.3d 112, cert. denied, 329 Conn. 901, 184 A.3d 1215 (2018).

The petitioner, representing himself, then filed the fourth and present habeas petition on October 29, 2018. In this petition, the petitioner claims that he was not canvassed properly about his right to appeal from the withdrawal of his public defender before the start of his criminal trial. That petition contains the following assertion: "[The] petitioner is claim[ing] only being 'not constitutionally canvassed' at the time [he] waived [his] rights . . . to appeal [his] public defender's withdrawal . . . [and] [n]othing [else], so ther[e] [are] no res judicata issues." (Emphasis omitted.) On November 15, 2018, the habeas court granted the petitioner's request for appointment of counsel and his application for a waiver of fees. On November 19, 2018, the habeas court, *Newson, J.*, acting on its own motion and without prior notice to the parties, issued an order dismissing this fourth petition as repetitious pursuant to Practice Book § 23-29 (3). The petitioner requested certification to appeal from that dismissal, which the habeas court denied. The petitioner then appealed to the Appellate Court from the dismissal of the fourth petition and the denial of the petition for certification to appeal.

Following oral argument, the Appellate Court summarily dismissed the petitioner's appeal. *Brown* v. *Commissioner of Correction*, supra, 196 Conn. App. 902. We subsequently granted the petitioner's petition for certification to appeal to this court in order to determine

whether the Appellate Court properly dismissed the petitioner's appeal challenging the propriety of the habeas court's dismissal of the fourth habeas petition under Practice Book § 23-29. See *Brown* v. *Commissioner of Correction*, supra, 335 Conn. 920. In the present appeal, the petitioner renews his claim that the habeas court should not have dismissed his petition under § 23-29 without first providing him with prior notice and an opportunity to be heard. In response, the respondent claims that the habeas court's dismissal was proper.

The appropriate standard of review is undisputed. "Plenary review . . . is appropriate because this appeal requires us to interpret the rules of practice." *Gilchrist* v. *Commissioner of Correction*, supra, 334 Conn. 553. "The interpretive construction of the rules of practice is to be governed by the same principles as those regulating statutory interpretation. . . . [P]rinciples of statutory construction apply with equal force to . . . [the] rules [of practice] . . . . The interpretation and application of a statute, and thus a rule of practice, presents questions of law over which our review is plenary." (Citations omitted; internal quotation marks omitted.) *State* v. *Heredia*, 310 Conn. 742, 755, 81 A.3d 1163 (2013). "[When] the meaning of a statute [or rule] is plain and unambiguous, the enactment speaks for itself and there is no occasion to construe it. Its unequivocal meaning is not subject to modification by way of construction. . . . If a statute or rule is ambiguous, however, we construe it with due regard for the authors' purpose and the circumstances surrounding its enactment or adoption." (Citations omitted; internal quotation marks omitted.) *Grievance Committee for the Hartford-New Britain Judicial District* v. *Trantolo*, 192 Conn. 15, 22, 470 A.2d 228 (1984).

We therefore begin with the text of the applicable provisions. Practice Book § 23-24 (a) provides: "The judicial authority shall promptly review any petition for a writ of habeas corpus to determine whether the writ should issue. The judicial authority shall issue the writ unless it appears that (1) the court lacks jurisdiction; (2) the petition is wholly frivolous on its face; or (3) the relief sought is not available." If the judicial authority declines to issue the writ under this rule, it "shall notify the petitioner" of its decision. Practice Book § 23-24 (b). Practice Book § 23-29 provides: "The judicial authority may, at any time, upon its own motion or upon motion of the respondent, dismiss the petition, or any count thereof, if it determines that: (1) the court lacks jurisdiction; (2) the petition, or a count thereof, fails to state a claim upon which habeas corpus relief can be granted; (3) the petition presents the same ground as a prior petition previously denied and fails to state new facts or to proffer new evidence not reasonably available at the time of the prior petition; (4) the claims asserted in the petition are moot or premature; [or] (5) any other

legally sufficient ground for dismissal of the petition exists."

This court recently analyzed the interplay between these two provisions in *Gilchrist* v. *Commissioner of Correction*, supra, 334 Conn. 548. In that case, we concluded that Practice Book § 23-24 requires the habeas court to review petitions *before* issuing a writ. See id., 561, 562. If the habeas court declines to issue the writ on the basis of any of the three grounds enumerated in § 23-24, the filing is rejected and "there is no service of process, no civil action and, accordingly, no need for the appointment of counsel." Id., 561. If the petition is rejected under § 23-24, the judicial authority acts without giving the petitioner prior notice or an opportunity to be heard. See id., 563. Because the petitioner in *Gilchrist* was not actually in custody for the conviction being challenged when the petition was filed; id., 550; the matter was remanded to the habeas court with direction to decline to issue the writ pursuant to § 23-24 (1) for lack of jurisdiction. See id., 563. In *Gilchrist*, we observed that, once the habeas court issues the writ and the action commences, Practice Book § 23-29 is the applicable provision that allows a habeas court to dismiss a petition. See id., 561, 563.

*Gilchrist* firmly established that Practice Book § 23-24 acts as a gatekeeping mechanism that allows a habeas court to review and dispose of a clearly defective petition by simply providing the petitioner with notice of its decision to decline to issue the writ. As a result of that conclusion in *Gilchrist*, however, we did not address the separate question of whether, once a writ has issued, a petition may be dismissed by a habeas court, on its own motion,[4] under Practice Book § 23-29 without prior notice or an opportunity to be heard. This court is now asked to determine what, if any, procedure is required prior to a habeas court's dismissal of a petition under § 23-29. See footnote 1 of this opinion. We conclude that prior notice and an opportunity to submit a brief or written response are required before a habeas court may dismiss a petition pursuant to § 23-29.

Practice Book 23-29 has at least two plausible interpretations—one that requires notice and an opportunity to be heard before dismissal, and one that does not. Compare *Boria* v. *Commissioner of Correction*, 186 Conn. App. 332, 341, 199 A.3d 1127 (2018) (concluding that hearing is not required before habeas petition is dismissed under § 23-29), rev'd, 345 Conn. 39,      A.3d      (2022), with id., 353 (*Bishop, J.*, concurring) (concluding that § 23-29 should require notice and opportunity to be heard prior to dismissal). "The test to determine ambiguity is whether the statute [or rule], when read in context, is susceptible to more than one reasonable interpretation." (Internal quotation marks omitted.) *Not Another Power Plant* v. *Connecticut Siting Council*, 340 Conn. 762, 779, 265 A.3d 900 (2021);

see also *Thomas* v. *Dept. of Developmental Services*, 297 Conn. 391, 400, 999 A.2d 682 (2010) ("Although [statutory] silence does not . . . necessarily equate to ambiguity . . . [the] silence [in the lien provision at issue] renders [that] provision ambiguous with respect to its scope because there is more than one plausible interpretation of its meaning. . . . Accordingly, we may consider the full panoply of available materials with which to interpret the statute." (Citations omitted; internal quotation marks omitted.)). Because both of these interpretations of § 23-29 are plausible, the text is ambiguous.

Although "statute and case law evince a strong presumption that a [habeas] petitioner . . . is entitled to present evidence in support of his claims"; *Mercer* v. *Commissioner of Correction*, 230 Conn. 88, 93, 644 A.2d 340 (1994); our rules of practice once allowed for the dismissal of habeas petitions without a hearing under specified circumstances. Specifically, Practice Book (1995) § 531 provided: "If the petitioner has filed a previous application, it and the action taken thereon shall be summarily described in the pending application. If a previous application brought on the same grounds was denied, the pending application may be dismissed without hearing, unless it states new facts or proffers new evidence not reasonably available at the previous hearing." This provision *expressly* authorized habeas courts to dismiss repetitive petitions "without [a] hearing . . . ." See *Boria* v. *Commissioner of Correction*, supra, 186 Conn. App. 355 (*Bishop, J.*, concurring). This text was subsequently eliminated from the rules of practice as part of a wholesale revision of the Practice Book provisions regarding habeas proceedings. See id., 358–59 (*Bishop, J.*, concurring).

In crafting the new language governing dismissals, the Rules Committee expanded the bases on which a habeas court may dismiss a habeas proceeding, after the issuance of the writ, beyond mere repetition. See Practice Book § 23-29. The Rules Committee, however, chose to omit language previously contained in Practice Book (1995) § 531 that authorized the judicial authority to dismiss a petition without a hearing. These newly created provisions also included, among other provisions, Practice Book § 23-24, which allows the habeas court to decline to issue the writ in the first instance without either prior notice or an opportunity to be heard.

The progression of these rules, read in light of our decision in *Gilchrist* and their relationship to the general rules governing habeas procedures; see Practice Book § 23-21 et. seq.; guides us to the conclusion that the Rules Committee intended for a habeas court to have the authority under Practice Book § 23-24 to decline to issue the writ without providing prior notice or an opportunity to be heard if the court lacks jurisdic-

tion over the claim, the petition is wholly frivolous on its face, or the relief requested in the petition is not available. The same considerations, however, lead us naturally to infer that the Rules Committee intended to require something more under Practice Book § 23-29 when it chose to abandon the language previously permitting a habeas court to dismiss a petition "*without* [*a*] *hearing* . . . ."[5] Practice Book (1995) § 531; cf. *Boria* v. *Commissioner of Correction*, supra, 186 Conn. App. 359 n.7 (*Bishop, J.*, concurring) ("the provisions of . . . §§ 23-24 and 23-29, authorizing [a] habeas court to summarily dispose of a writ or petition for certain enumerated grounds, are complementary and not mere duplications of the same judicial authority").

We likewise observe that, under Practice Book § 23-24, a habeas court is required to provide notice to the petitioner only after it has already declined to issue the writ. The Rules Committee, however, chose not to include a similar provision in Practice Book § 23-29. This textual difference between these two provisions provides us with yet another reason to conclude that dismissal under § 23-29 requires additional procedural safeguards beyond those required for a decision not to issue the writ under § 23-24. Those procedural safeguards, we conclude, must include at least prior notice to the petitioner or the petitioner's counsel and an opportunity to file a written response.[6]

It does not, however, necessarily follow from this premise that a habeas court's dismissal on its own motion pursuant to Practice Book § 23-29 requires a full hearing, particularly when both provisions contain similar bases for dismissal. See, e.g., Practice Book § 23-24 (a) (1); Practice Book § 23-29 (1). In reaching this conclusion, we are guided by the public policy underlying the legislature's comprehensive habeas reform in 2012. See P.A. 12-115, § 1. As this court has previously recognized, those amendments were "intended to supplement [the] efficacy [of General Statutes § 52-470] in averting frivolous habeas petitions and appeals." *Kaddah* v. *Commissioner of Correction*, 324 Conn. 548, 567, 153 A.3d 1233 (2017). Although "the 2012 habeas reform did not limit the right to counsel under [General Statutes] § 51-296 (a) or otherwise render habeas relief unavailable in broad categories of cases"; id.; the primary goal underlying the legislature's amendments was, clearly, to address the increase in habeas petitions and to efficiently dispose of frivolous petitions. See 55 H.R. Proc., Pt. 5, 2012 Sess., p. 1601, remarks of Representative Arthur O'Neill ("[The 2012 amendments were] the first real progress we have made in trying to improve the habeas corpus process in Connecticut and [to] expedite things so that the legitimate habeas . . . petitions get heard as quickly as possible. And what's blocking the system up are a lot of cases where there's not much merit, it seems, to the claims, but there they keep on coming."). Indeed, in crafting the rules governing

habeas proceedings, the Rules Committee itself expressly provided that "[t]he judicial authority may establish such additional procedures as it determines will aid in the fair and *summary disposition* of habeas . . . petitions, including, but not limited to, scheduling orders." (Emphasis added.) Practice Book § 23-34.[7]

In ascertaining the meaning of Practice Book § 23-29 or its interplay with Practice Book § 23-24, we need not look to the general rules of civil procedure or the specific provisions dealing with motions to dismiss, such as Practice Book §§ 11-10 and 11-18. Although we acknowledge that habeas actions are civil proceedings in nature, the introductory provision to the general rules governing habeas proceedings makes it clear that, "[e]*xcept as otherwise provided herein*, the procedures set forth in *Sections 23-22 through 23-42 shall apply* to any petition for a writ of habeas corpus which sets forth a claim of illegal confinement." (Emphasis added.) Practice Book § 23-21. The same provision goes on to exclude habeas petitions brought to determine the custody and visitation of children or those filed on behalf of a person confined to a hospital on the basis of a mental illness. Practice Book § 23-21. It is clear from this language that the Rules Committee did not intend for the general provisions governing civil cases to resolve the question before us.

It would be both overly burdensome and inefficient to require habeas courts to give full hearings on every petition that survives the habeas court's initial gatekeeping review[8] under Practice Book § 23-24 but that thereafter appears to warrant dismissal under Practice Book § 23-29. Instead, on the basis of our interpretation of the rules as established by the Rules Committee, we conclude that petitioners, after receiving notice of the court's intention to consider dismissal of the petition, have a right to be heard on the papers by filing a brief or a written response.[9] This interpretation, we believe, satisfies the intent of the Rules Committee's omission of the phrase "without [a] hearing" from § 23-29 and its express allowance of postdecisional notice in § 23-24. This reading not only maintains a meaningful distinction between §§ 23-24 and 23-29, but also prevents overburdening an already strained habeas docket by requiring a full hearing for legally deficient petitions under § 23-29. We note that a habeas court may, of course, still hold a full hearing when it deems it appropriate.[10]

Because the habeas court in the present case did not have the benefit of this court's decision in *Gilchrist*, the case must be remanded to the habeas court for it to first determine whether any grounds exist for it to decline to issue the writ pursuant to Practice Book § 23-24.[11] If the writ is issued, and the habeas court again elects to exercise its discretion to dismiss the petitioner's habeas petition on its own motion pursuant to Prac-

tice Book § 23-29, it must, in accordance with the foregoing, provide the petitioner with prior notice and an opportunity to submit a brief or a written response to the proposed basis for dismissal.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to reverse the habeas court's judgment and to remand the case to that court for further proceedings consistent with this opinion.

In this opinion ROBINSON, C. J., and D'AURIA, MULLINS, ECKER and KELLER, Js., concurred.

[1] We take judicial notice of the fact that there are several other pending appeals that raise this same issue. See *Pierce* v. *Commissioner of Correction* (AC 44188); *Howard* v. *Commissioner of Correction* (AC 42824); *Leffingwell* v. *Commissioner of Correction* (AC 41663); *Horak* v. *Commissioner of Correction* (AC 41662); *Brewer* v. *Commissioner of Correction* (AC 41635).

[2] The state asserted that, since 1996, the petitioner "had been the owner of several properties, namely, a nightclub, other businesses and an airplane, among other assets." *State* v. *Brown,* supra, 256 Conn. 297 n.6. The petitioner did not contest these assertions at trial and, indeed, still does not contest them in the present appeal.

[3] In 2013, the petitioner filed a habeas petition in federal court, challenging his conviction on the ground that he was denied his constitutional right to be represented by counsel at his criminal trial. *Brown* v. *Commissioner of Correction,* Docket No. 3:13-CV-1133 JCH, 2014 WL 1820642, *3 (D. Conn. April 4, 2014). The United States District Court for the District of Connecticut ultimately denied the petition. See *Brown* v. *Commissioner of Correction,* Docket No. 3:18-cv-1125 (MPS), 2018 WL 3715279, *2 (D. Conn. August 3, 2018).

The petitioner later filed a second federal habeas petition in 2018, claiming, inter alia, that he was not canvassed before he waived his right to contest the withdrawal of the public defender and that all of his prior counsel were ineffective for not raising that issue. Id. The District Court transferred the petition to the United States Court of Appeals for the Second Circuit to determine whether it would authorize the successive petition; id., *3; and the Second Circuit denied such authorization.

[4] Practice Book § 23-29 does permit the judicial authority to dismiss a petition "at any time, upon its own motion or upon the motion of the respondent . . . ." Thus, this section allows the court to act on its own motion, even after the writ has issued. The question remains what, if any, process is due the petitioner before the court issues such a dismissal. As Judge Bishop noted in his concurrence in *Boria,* if the respondent files a motion to dismiss, then the petitioner would receive notice. See *Boria* v. *Commissioner of Correction,* 186 Conn. App. 332, 363, 199 A.3d 1127 (2018) (*Bishop, J.,* concurring) ("[when] the respondent properly serves the petitioner with notice of [a] motion and the grounds therefor, and the petitioner simply fails to exercise his right to file a brief or [to] make oral argument, it is clear that the habeas court may properly decide the motion without having heard from the petitioner"), rev'd on other grounds, 345 Conn. 39, A.3d (2022).

[5] The respondent argues that the language in Practice Book § 23-29 allowing the court to dismiss a petition "at any time" necessarily means that the court may dismiss a petition before giving prior notice or an opportunity to respond. We disagree. As this court's decision in *Gilchrist* makes clear, that particular phrase is, itself, necessarily limited to the period of time following issuance of the writ pursuant to Practice Book § 23-24. See *Gilchrist* v. *Commissioner of Correction,* supra, 334 Conn. 561 ("[i]t is true that § 23-29 states that the judicial authority may take action under its authority 'at any time,' but the 'time' it references necessarily is defined by the time at which the rule itself becomes operative, which is after the habeas court issues the writ and the action has commenced"). Although the plain text of the rule indicates that the habeas court, on its own motion or that of the respondent, may dismiss a petition once the writ has issued, it does not purport to eliminate procedural requirements. Simply put, the use of the phrase "at any time" in § 23-29 appears to govern when, and not how, a dismissal can occur.

[6] We can discern no principled reason for concluding that the Rules Committee would implicitly require notice to a petitioner before a dismissal

under Practice Book § 23-29 without also providing the petitioner with some means of response. Further, in cases in which counsel has already been appointed and there is an appearance on file, counsel should receive the notice and the date by which counsel should file a brief or a response.

[7] Because this provision contemplates the creation of additional rules specifically applicable to habeas proceedings, we respectfully disagree with the concurrence that we must consider the relationship of Practice Book § 23-29 to the broader scheme of the rules for civil actions "to ensure the coherency of our construction." (Internal quotation marks omitted.) Indeed, Practice Book § 23-21 provides in relevant part that, "[e]xcept as otherwise provided herein, the procedures set forth in Sections 23-22 through 23-42 shall apply to any petition for a writ of habeas corpus which sets forth a claim of illegal confinement. . . ."

We also disagree that Practice Book § 23-34 is mirrored by Practice Book § 23-14, as the latter specifically limits complex litigation judges to orders facilitating "*the management of . . . complex litigation cases.*" (Emphasis added.) The authority vested by § 23-34 is broader. It contains no such limitation and, in fact, expressly emphasizes that the habeas court's discretion is not limited to mere scheduling orders.

[8] Although we agree with Judge Bishop that, "in the long run, a more fulsome use of the court's authority pursuant to [Practice Book] § 23-24 would maximize judicial efficiency" by "weed[ing] out inappropriate [habeas petitions] as a preliminary matter pursuant to its gatekeeping function"; *Boria* v. *Commissioner of Correction*, supra, 186 Conn. App. 359 n.7 (*Bishop, J.*, concurring); we recognize that, in some cases, the habeas court may not have all of the necessary information required at the time of the initial review to make that determination.

[9] As we noted at the outset, and particularly in light of *Gilchrist* and the majority and concurring opinions in the present case, we expressly welcome the Rules Committee to address the interplay between these rules and to amend the text of the relevant rules to the extent it deems necessary.

[10] Although Practice Book § 23-40 (a) affords a habeas petitioner the right to be present at "any evidentiary hearing and at any hearing or oral argument on a question of law which may be dispositive of the case," this rule speaks to when a petitioner's presence is necessary and not when a hearing is required. This rule does not require the habeas court to conduct a hearing prior to the dismissal of the petition pursuant to Practice Book § 23-29. This interpretation does not render the petitioner's right to be present illusory.

Section 23-29 still serves to ensure that a petitioner has a right to be at any hearing or oral argument that the habeas court, in its discretion, grants on its own motion to dismiss pursuant to that section. As we noted previously, the habeas court is well within its right to hold oral argument or to conduct a hearing when it deems it necessary.

[11] We are aware that there are other cases pending before this court and the Appellate Court that were decided without the benefit of this court's decision in *Gilchrist*. See footnote 1 of this opinion. In cases decided prior to *Gilchrist*, the most efficient process to resolve those cases is to remand them to the habeas court to determine first whether grounds exist to decline the issuance of the writ.